UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS SHARPE,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | NO. CV 09-3090-SS<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Francis Michelle Sharpe ("Plaintiff") brings this action seeking to reverse the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits. The parties consented to the undersigned Magistrate Judge on July 10, 2009. For the reasons stated below, the decision of the agency is AFFIRMED.

//

## II. PROCEDURAL BACKGROUND

Plaintiff filed applications for SSI and SSD benefits on November 28, 2005, alleging chronic lower back pain. (Administrative Record ("AR") 48). The Agency denied her application.[1] Plaintiff then filed a request for a hearing, which was held on December 13, 2007, before Administrative Law Judge ("ALJ") John Moreen. (AR 22).

On January 25, 2008, the ALJ issued a decision denying benefits. (AR 10). Plaintiff sought review before the Appeals Council, which denied her request on April 16, 2009. (AR 1). Plaintiff filed the instant action on April 29, 2009. (Complaint at 2). Pursuant to the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on January 6, 2010. (Jt. Stip. at 14).

## III. FACTUAL BACKGROUND

Plaintiff was born on March 17, 1969, and was thirty-eight years old at the time of the hearing. (AR 25, 81). Before her injury, Plaintiff worked as a medical assistant in a cardiology clinic. (AR 140). Plaintiff alleges disability resulting from an injury to her back on June 10, 2005. (AR 158).

Plaintiff was injured when she attempted to prevent a patient from falling off a cardiology clinic treadmill. (AR 158). Shortly

---

[1] The denial letter is undated.

thereafter, Plaintiff complained of pain in her lower back, neck, and shoulder. (AR 27). She stopped working the day the injury occurred. (AR 93). She has not worked since the day of the injury. (<u>See</u> AR 140). Dr. Seetha Lath, M.D., treated Plaintiff at the Arroyo Seco Medical Group on the day of the injury and over the next several days. (AR 143-62). Plaintiff complained of stiffness and pain in right shoulder, neck, and lower back. (AR 145).

On October 17, 2005, Plaintiff's primary treating physician, Dr. Gary Moscarello, M.D., issued an orthopedic report discussing Plaintiff's injuries. (AR 158). Dr. Moscarello noted that Plaintiff's "shoulder improved and neck improved" and "the shoulders are now doing fine. No complaints." (AR 159). While meeting with Dr. Moscarello, Plaintiff also stated that "she can sit for about a half hour, stay in one spot for about a half hour" and "can walk for a half hour." (AR 159). Further, an MRI scan of Plaintiff's lower back revealed that Plaintiff's "lower spine is normal." (AR 160). Accordingly, Dr. Moscarello noted that while Plaintiff's back continued to bother Plaintiff, she could work in a job "where she is changing positions frequently." (AR 161).

Other physicians also affirmed this diagnosis and observed Plaintiff's improving condition. For example, Michael J. Patzakis, M.D., one of Plaintiff's workers compensation doctors, concluded that Plaintiff "can return to her usual and customary job duties" in a May 2006 report. (AR 220).

//

Finally, the consultive orthopedic examiner, Dr. Harlan Bleecker, M.D., determined that Plaintiff can "sit, stand, and walk 6 out of 8 hours" and "lift 25 pounds occasionally, 10 pounds frequently" with "no restrictions to the upper or lower extremities" in his September 2007 report. (AR 189).

The record fails to disclose evidence of treatment for Plaintiff's obesity. (AR 137-230). Dr. Lath noted that Plaintiff appeared obese in a medical examination that took place before Plaintiff's injury occurred. (AR 154). However, he did not recommend any treatment for Plaintiff's weight.

Plaintiff's doctors observed that Plaintiff drank heavily after her injury. For example, Dr. Bleecker noted that Plaintiff drinks "six to eight beers per day and one or two glasses of liquor every other day." (AR 187). Plaintiff herself admitted that she was "drinking every day" in an examination with Dr. Lath in February 2007. (AR 138).

Plaintiff applied for Supplemental Security Income and Social Security Disability benefits on November 28, 2005. (Joint Stip. at 2). In her application, she stated she was not "able to work because of [her] disabling condition" stemming from lower back pain (AR 76).

On Plaintiff's pain questionnaire, Plaintiff stated that she can only stand for fifteen to twenty minutes at a time. (AR 112). She stated that she can only walk up to one block before having to sit down and cannot "carry anything except for [her] keys or wallet." (AR

Finally, the consultive orthopedic examiner, Dr. Harlan Bleecker, M.D., determined that Plaintiff can "sit, stand, and walk 6 out of 8 hours" and "lift 25 pounds occasionally, 10 pounds frequently" with "no restrictions to the upper or lower extremities" in his September 2007 report. (AR 189).

The record fails to disclose evidence of treatment for Plaintiff's obesity. (AR 137-230). Dr. Lath noted that Plaintiff appeared obese in a medical examination that took place before Plaintiff's injury occurred. (AR 154). However, he did not recommend any treatment for Plaintiff's weight.

Plaintiff's doctors observed that Plaintiff drank heavily after her injury. For example, Dr. Bleecker noted that Plaintiff drinks "six to eight beers per day and one or two glasses of liquor every other day." (AR 187). Plaintiff herself admitted that she was "drinking every day" in an examination with Dr. Lath in February 2007. (AR 138).

Plaintiff applied for Supplemental Security Income and Social Security Disability benefits on November 28, 2005. (Joint Stip. at 2). In her application, she stated she was not "able to work because of [her] disabling condition" stemming from lower back pain (AR 76).

On Plaintiff's pain questionnaire, Plaintiff stated that she can only stand for fifteen to twenty minutes at a time. (AR 112). She stated that she can only walk up to one block before having to sit down and cannot "carry anything except for [her] keys or wallet." (AR

113-14). Plaintiff also stated that she does not "have any daily activities now [because] it hurts too much to move around." (AR 111).

However, in Plaintiff's December 27, 2005 Daily Activities Questionnaire, Plaintiff admitted she drives her car, dusts, vacuums and washes dishes, though not as well as she could before her injury. (AR 114). Plaintiff testified that she cleans her dishes, cooks dinner, and takes her son to and from school. (AR 32). Plaintiff also stated she could sit for forty-five minutes and stand and walk for forty-five minutes. (AR 42).

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny

v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

## V. DISCUSSION

Plaintiff contends the ALJ erred for two reasons. (Jt. Stip. at 2). First, Plaintiff contends that the ALJ failed to consider Plaintiff's obesity. (Jt. Stip. at 2). Second, Plaintiff contends that the ALJ did not properly consider Plaintiff's subjective symptoms. (Jt. Stip. at 2). For the reasons discussed below, the Court disagrees with each of Plaintiff's contentions.

### A. The ALJ Gave Appropriate Consideration to Plaintiff's Obesity

Plaintiff argues that the ALJ failed to properly consider her obesity. (Joint Stip 6-7). The Court disagrees.

Plaintiff weighed 239 pounds with a height of 68 inches at the time of her September 2007 orthopedic consultation. (AR 187). Dr. Lath also noted that Plaintiff appeared obese in an examination in April 2005, before Plaintiff was injured. (AR 154). Notably, Dr. Lath did not prescribe any treatment for Plaintiff's obesity nor mention whether Plaintiff's obesity had any effect on Plaintiff's functioning. (See AR 154-157). No other physician mentioned obesity or prescribed any treatment for Plaintiff's weight. (AR 141-230). Plaintiff did not

state that her obesity affected her functioning in her application or in her testimony. (AR 24-47, 76).

An ALJ should consider whether a claimant's obesity affects the claimant's health and ability to work even when the claimant does not raise the issue. <u>Celaya v. Halter</u>, 332 F.3d 1177, 1182 (9th Cir. 2003). It is a reversible error for an ALJ not to consider a claimant's obesity when obesity is likely a partial basis for Plaintiff's impairments and when Plaintiff is pro se. <u>Id.</u>

However, in <u>Burch v. Barnhart</u>, the Ninth Circuit held that an ALJ has no duty to independently consider Plaintiff's obesity when: (1) the record does not indicate that the plaintiff's obesity had an effect on his impairments; and (2) the plaintiff is represented by counsel. <u>Burch v. Barnhart</u>, 400 F. 3d 676, 682 (9th Cir. 2005).

An ALJ may only evaluate a case based on the information in the record. Social Security Rule 02-01p. Here, even though the ALJ had no independent obligation to consider Plaintiff's obesity, the ALJ considered Plaintiff's obesity by noting Plaintiff's weight and then by examining the record. (AR 16). The ALJ correctly determined that none of Plaintiff's physicians recommended treatment for Plaintiff's weight and that Plaintiff did not mention her weight as a physical impairment. (AR 16).

While Dr. Lath's pre-injury medical report notes that Plaintiff appears obese, there is no evidence that indicates Plaintiff's obesity affected her impairments. (AR 154). Under the virtually analogous

Burch decision, the ALJ here had no obligation to give further consideration to Plaintiff's obesity.

Plaintiff failed to provide any evidence that her obesity affects her functioning. While Plaintiff asserts that the ALJ's decision was devoid of factual analysis regarding Plaintiff's obesity, Plaintiff fails to identify any specific probative facts or records that the ALJ failed to consider. (See Jt. Stip. at 2-5). Obesity that does not affect other impairments is not itself an impairment. See Social Security Rule 02-01p. Accordingly, the ALJ correctly determined that, based on the record, Plaintiff does not suffer limitations from her obesity.

In addition, Plaintiff was represented by counsel since July 16, 2006. (AR 55). Plaintiff's counsel did not raise the issue of Plaintiff's obesity affecting her functioning at any time before the hearing. (See AR 55-240). At the hearing, Plaintiff's counsel questioned Plaintiff about her weight gain. (AR 35-34). However, neither Plaintiff nor Plaintiff's counsel claimed that her obesity affected her functioning. (AR 35).

Finally, Celaya does not compel a different outcome here. Celaya holds that, in limited circumstances, an ALJ should consider whether a claimant's obesity affects the claimant's health and ability to work even when the claimant does not raise the issue. Celaya, 332 F.3d at 1182. However, the Celaya ALJ was only under this obligation because the record clearly showed that the claimant's obesity could exacerbate her reported illness and the claimant was pro se. Id. Here, no

evidence demonstrates that Plaintiff's obesity affected her functioning. Furthermore, Plaintiff was represented by counsel throughout the administrative process. (AR 55). Accordingly, Celaya does not compel a different outcome. Remand is not required.

### B. The ALJ Properly Considered Plaintiff's Subjective Symptoms

Plaintiff next contends that the ALJ did not provide sufficient reasons for rejecting her subjective testimony. (Jt. Stip. at 7). The Court disagrees.

Plaintiff stated that "tightness and pain in [her] lower back" prevents her from working. (AR 29). Similarly, she claimed she does not have any daily activities because it "hurts too much to move around." (AR 111).

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must first evaluate whether the claimant presents medical evidence of an underlying impairment which could reasonably be expected to produce pain or the symptoms alleged. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need only show that her impairments could reasonably have caused some degree of the symptom. Id. If the claimant meets this test, the ALJ may only reject the claimant's testimony about the severity of her symptoms by offering specific, clear, and convincing reasons for doing so. Id.

The ALJ may consider the following factors when weighing the claimant's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in her testimony or between her testimony and conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which she complains. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). An ALJ may also consider a lack of objective medical evidence when evaluating a claimant's subjective complaints. <u>Rollins v. Massanari</u>, 261 F. 3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Here, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (AR 19). However, he also determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 19). The ALJ provided several clear and convincing reasons in support of his determination.

First, the ALJ found that Plaintiff's daily activities are inconsistent with claims of disabling pain. (AR 19). For example, Plaintiff's 2005 Daily Activities Questionnaire shows that Plaintiff drives her car, dusts, vacuums, and washes dishes, though not as well as she could before her injury. (AR 114). She also grocery shops. (AR 114). Further, Plaintiff's own testimony at the hearing established that she washes dishes, cooks, shops, and drives her son to and from school. (AR 32-34).

Second, the ALJ determined that no physician has given a diagnosis fully supporting Plaintiff's claims of disabling pain.[2] For example, the ALJ determined that Plaintiff claimed that she suffered from connective tissue disease, but that no physician diagnosed her with this condition. (AR 19, 46). Finally, the ALJ determined that several physicians found Plaintiff "to be much more capable than she claims."[3] (AR 19).

An ALJ may only reject a claimant's claims about the severity of symptoms by offering clear and convincing reasons for doing so. Here, the ALJ specifically identified the lack of medical evidence supporting Plaintiff's claims and the inconsistency between Plaintiff's daily activities and her claims of disabling pain as reasons for rejecting Plaintiff's subjective pain testimony. The record supports the ALJ's reasons. Accordingly, the ALJ properly rejected the Plaintiff's subjective testimony.

//

---

[2] The ALJ also determined that Plaintiff's alcohol use likely had an impact on her ability to work. (AR 16).

[3] For example, one of Plaintiff's workers compensation doctors concluded that Plaintiff "can return to her usual and customary job duties" in a May 2006 report. (AR 220). The consulting orthopedic doctor also determined that Plaintiff can "sit, stand, and walk 6 out of 8 hours. [Plaintiff] can lift 25 pounds occasionally, 10 pounds frequently." (AR 189).

11

## VIII. CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 28, 2010.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE